Good morning. May I please the court? My name is Bill Janago and I represent the appellant in this action, Jay Kim. I'd like to reserve one minute of my time for rebuttal. The two convictions that are at issue in this appeal both arise out of the over-the-counter sale of non-prescription cold medication below the single transaction limit set by both federal and state law. There's the January 4th transaction, there's the January 5th transaction. I find it helpful when thinking about the issue here, that sort of set theory or Venn diagram. There's one area where it is clear that Mr. Kim's conduct would have been lawful. Under 80246, if it was a sale for personal use, no question that the over-the-counter sale of the cold medication was lawful. A sale is for personal use if it's at or below the single transaction limit and it's for a legitimate medical use. That's one problem, because if it's over-the-counter What's the single transaction limit? The federal law doesn't have a single transaction limit, does it? It actually did, Judge Berzon. At the time, it was 24 grams. The state limit was much lower. It was 9 grams. And the record establishes Was the federal law a reporting issue? You had to report a transaction that was more than 24 grams. It was referred to as a threshold limit. Below 24 grams, you didn't have to report. Over 24 grams Is it automatically illegal under 24 grams to sell it, or you just didn't have to report? You just didn't have to report. We still have the same issue, like, if you sold 10 or 5, but you had the knowledge or should have known that the person was going to use it, it wouldn't matter how much. That's exactly right. You could sell 1 gram, and it would go over to the other side of 841C2, 842C2, I'm sorry. And if you have reasonable cause to believe that it was going to be used to manufacture a controlled substance, then it's illegal if it's half a gram. Okay, so what is the relevance of the personal transaction, either under federal or state law? Judge Berzon, I think it contributes to the problem with the vagueness of the law, because if you're someone like Mr. Kim, who looks up the law and says, okay, it's 9 grams now under state law, I'm a state farmer. But it's not 9 grams. It's 9 grams that you have to report. He apparently didn't understand that, but that is what it says. I believe that if it was over 24 grams you had to report, that's the federal... No, under state law it's 9 grams. He had 9. There's no reporting requirement under state law. If you sell more than 9 grams under state law... Sorry, but there is, and it's 9 grams. That's right. That's right. And it's a reporting requirement. And also, it's a reporting requirement. Okay. So I don't really understand what the relevance – I understand why a layperson might think it and may be looking for a – I mean, it's a troubling case, because here was somebody, it looks like, who was looking for a bright-line rule, and unfortunately, there isn't one. The question is, is there some – since we operate under myriad laws without numbers, why does this statute need to have one? I guess that's the question, need to have a number, which is really what you're saying. You need to tell Mr. Kim, you can sell up to X amount and that's it. Because it's an over-the-counter drug is really the problem. That's why you have to tell him, because the law allows it to be sold without asking any questions whatsoever. You don't need a prescription. You can just walk in, and the experts agree here, you can walk in to a Savon, to a Walgreens, and you can come in, buy 9 grams, walk out, come back in and buy another 9 grams, walk out, come back in and buy another 9 grams. Not legally, if somebody was watching and knew what was happening. I mean, what you're saying is that when you have a small pharmacy, and it is troubling, it's more likely that the government's going to be able to prove this up, because you're going to have – you're looking at – and had reason to know. And where if you're dealing with a bigger store, they're going to go to different checkout counters, and how's anybody going to know? That's really what your problem is. It's a vague law. It doesn't give notice as to what you have to do. It's not that it's vague. It's that it operates differently. It's easier to prove under some circumstances than others. Well, if you look at it from the perspective of the pharmacist who is supposed to comply with the law, what is he supposed to do? You're supposed to – you then have to police every over-the-counter transaction? I mean, think about what happened here. On January 4th – How about the other is, maybe you wouldn't have to, but what if, in fact, you have the situation where here, for better or for worse, because it is a small pharmacy, he knows and sees what's going on. So we're not going to deal with the situation where you don't know what's going on. But he sees guys come in. They say, I want to buy the whole nine yards. I want to buy up all your cold medicine. He says, you know, I can't sell you all my cold medicine. Well, most people who are average consumers with sinus or cold problems don't come in and say, I'd like to buy out your entire pharmacy. I mean, isn't that a tip-off of new or should have known? And then you've got – they come back the next day, and they ask again for the high quantity, and the clerk says, no, you can't do that. The – first of all, on January 5th, which is the second transaction, there's no evidence that Mr. Kim even knew about that. You're not making a sufficiency of the evidence claim on the second one. No, I'm – I think that I don't get – the point is that under – I'm wondering why not. I mean, it seems like the second one is very problematic. He didn't seem to see anything. I mean, we don't – he has no proof that he did anything except see them. If – I would submit, Judge Berzano, if it's close to a sufficiency of the evidence argument, then it certainly does meet the requirement that it's not clear that his conduit is lawful. I think it's an easier argument. If I was going to show sufficiency, I'd have to show there's no rational basis for the jury's verdict. All I have to do now is show that it's not clearly prohibited by the law, and I don't think that it is, and that's the problem with the law, because if it was sufficiency, I'd have to show there's no basis. What I do have to show in order to challenge it as vague is that his conduct is not clearly prohibited. When they come in on January 4th, Mr. Kim said that the people who he thought were using this to buy – to make methamphetamine were in their 30s, were dirty, disheveled, and have long hair. Who does the government send in? Three beefy, clean, well-dressed, shaved undercover agents. He comes down from his pharmacy counter, intercedes, and says, Who's buying whom? What are you going to buy this for? And they give him answers. They say, We have a large family. We use it a lot. They said that to him. He makes an inquiry. It's an over-the-counter drug. What's he supposed to do? Say, No, I'm not going to sell to you? These guys were vulgar. They were using language like, Blow me. He just wanted to get them out of the store. They even said to him, Can we come back tomorrow and buy some more? He said, No. And they said, What about the other day? What about the next day? He says, We're not selling every day. We're not selling every other day. And then they come in the next day, and he sees them. There's an acknowledgment. The record is that one of the agents looks at him, and Mr. Kim looks back. There's no evidence that he recognized who they were. He filled 27,000 prescriptions in the calendar year 2000. Between day one and two, did he? I think that the record shows that he filled 65 prescriptions on one of those days and maybe 40 on the other day. But the point is that he was a busy person. He looked at everybody who came in the store. There's no evidence the second day that he even knew what they bought. That's exactly right, Judge Berzon. And so I think that we're entitled to challenge it as being vague. See, that's kind of where Judge Berzon is. It's more of a sufficiency problem. We have two circuits who have looked at it and say, We've looked at it. It's not vague. So you want us to step out from the sister circuits and say, No, you're wrong. It is vague because why? No, I'm not asking you to say the statute is vague on its face. And the other circuits, the 8th Circuit and the 10th Circuit, do not say that it's vague on its face. They do say it could be vague as applied. And that's all I'm saying here. That as applied to over-the-counter medicine, that's what we're dealing with here. When applied to over-the-counter medicine, you can have a circumstance where it's vague as applied. And that's this case. I'm not asking you to say the law is vague on its face. And those other circuits... Wait a second. Go ahead. I meant what vague on its face means. That means that in all circumstances, it would not provide adequate notice. If Mr. Kim was... I'm sorry. Why does it mean vague not on its face? That's what I don't understand. If you say that it's not vague in all circumstances, the problem is that it's not giving him sufficient notice given his circumstances? That does seem to merge into a sufficiency problem. Well, I suppose it does. But then the standard for meeting a sufficiency argument is much higher than it is for showing that on the one, if it's a sufficiency argument, I've got the burden of showing no reasonable juror concluded he was guilty. If it's a vagueness as applied argument, the government has the burden of showing that his conduct was clearly prohibited. And I don't think they can do that. Not when you make your inquiry. Not when on January 5th, there's no interaction by him at all. Well, if you believe that he meets the qualifications of the statute, i.e. that he reasonably knew or reasonably should have known, then his conduct is clearly covered. So it requires getting into his mind. But let's suppose that in fact, on January 4th, he looked at these people and he said, you know, these people are going to use it to make methamphetamine, but they're under the number and my understanding is that I can sell to them, so I'm going to sell to them. Let's suppose that was the state of mind. And that's essentially what, would that be clearly covered? If he thought that he could sell it to them no matter what, even if they're going to use it to make methamphetamine, that would be wrong and the mistake of law would be no defense. But he's told and he agrees that if he sells any quantity knowing or reasonably believing that the person is going to use it to manufacture methamphetamine, he's guilty. What's wrong with that? I mean, here's where I'm having trouble is that what you're really saying is that given the facts here, they shouldn't rise as a matter of law to reasonable cause to believe. I mean, that's really what you're saying. I may be saying that, but what I think I'm saying is that with an over-the-counter medicine, this can be sold with no questions asked. When do you cross over from legitimate medical use, which is clearly lawful, to reasonable cause to believe? When someone buys at the limit? Well, that can't be because the law says you can buy up to 9 grams. Is it when someone... The law doesn't say that. If it's for legitimate medical use. What I'm saying, Jennifer, is if someone comes in and buys 9 grams at a Walmart and the cash register sells it to them, that sale is illegal if the cash register has reason to believe that it's going to be used to manufacture methamphetamine. It's lawful if the person believes that it's going to be used for a legitimate medical use. When you don't have any prescription, what is it that distinguishes between for a legitimate medical use and reasonable cause to believe? It depends on what you knew. Okay, the guy walks in and says, I need this for my meth lab. How much can you sell me? Illegal, straight out. Why? Because... But no, but it's illegal. You just told me if it's a over-the-counter drug which I can legitimately sell, then it should be okay. No, it's got to be over-the-counter and for legitimate medical use. My point is that you sell this without asking any questions. Okay, so then that's part number two. Guy comes in and says, hello, I'd like to buy this. And you say,  That's part two. Then the question is, is there something in the middle between, hi, I want to use it for my drug lab and I'm not talking. And the question is, you're saying that the law can't impose a reasonable to believe between these two because the guy doesn't know what's reasonable and what's not reasonable. No, I don't think I'm saying that. I think that in most situations and if you look at the circuit decisions that the government has decided from the 8th Circuit and the 10th Circuit, they're easy cases because someone's selling caseloads, they're trying to use suspicious names, they're buying from multiple wholesalers. None of that was going on here. He bought from Bergen Brunswick. That's the only person he bought from. That's all true. And it's a disturbing case for that reason. But I still have a hard time understanding why it's not simply a question of like many other men's rare questions, it's an issue of inferring what he either knew or should have known and we have it all over the law. I don't see why it's different than any other men's rare question. Because there's no guidelines for enforcement so it's arbitrary. Mr. Kim gets prosecuted. Bergen Brunswick, who was selling him the 24 bottles a day, goes scot-free. Why? Who knows? Do you have evidence of that in the record, the sort of arbitrary prosecution? Yes. There was expert testimony from Dr. Weissman who's dean at the pharmacy school at USC. And it's arbitrary prosecution. Pardon? And there's arbitrary prosecution. Well, but unless it's on a suspect basis. But that is to say they couldn't have tried to charge these people. I mean, I don't know what's going on out in the world but I'm willing to accept your representation that they're more likely to go after small sole ownership pharmacies because they're much easier to prove and that's disturbing. Well, let's say Mr. Kim never he sealed himself off in his pharmacy booth so he couldn't see the retail transaction section. And he told his cash register as he did the law says we can sell up to 9 grams in a single transaction if it's for a legitimate medical use. I don't want you to sell more than 9 grams. And that's all he does and he sells 24 bottles a day. And he doesn't tell her and don't sell less than 9 grams less than 9 grams either if you have reason to think they're going to use it for a meth lab which is what he should tell her. But he tells her what she has to do in order for it to be lawful. It has to be under 9 grams at or below 9 grams and it's got to be for legitimate medical use. And you have to not have reason to believe that they're So the question then becomes in the extreme cases it's easy to know when someone violates the law. If someone is using secret transactions if they're selling cartons from the back door if they're purchasing from multiple distributors First of all I don't this is not a vicarious liability prosecution as such and if it were we could worry about it. In other words they're not saying that they were prosecuting him because of what he didn't tell his clerk. Their contention at least is that he himself had reason to know this in a particular instance. The second category of case would be more difficult and more troublesome and we don't have any. That's right. But my point was to try to illustrate how the law is vague because it doesn't tell you if it's an over-the-counter drug unless you intercede with every transaction how do you know? What do you have to do? But in the example you gave if he doesn't know anything aside from whether there might be some blind eye because his sales are off the charts it's the clerk who's at jeopardy here not your pharmacist correct? That's right and what does the clerk have to do under that circumstance? The problem is that the law does not tell the clerk given that I think we have your point in mind and we'll hear from the government Thank you Did he lose his license? He did lose his license yes after 16 years of practice He can't go back to his bar May it please the Court Greg Lester for the United States Your Honor you have correctly identified what the defendant's argument really is this is really a sufficiency argument in disguise which is why so much time the second count had it been made should have succeeded in my view the second count yes I see the January 5th count I see absolutely no the fact that the guy smiled at him does not seem to me to be evidence even that he knew where they were much less than anything else well as the defense just pointed out but it wasn't made so we don't have to discuss it alright Your Honor well I mean the Court did say that you were troubled by this and I do want the Court to understand that there was a tremendous amount of evidence that we've tried to illustrate but let me read briefly from the record the witness undercover officer testified this is a GER 79 the I'm sorry 78 rather did you see whether he looked at you I asked the witness said yes we made eye contact I smiled waved to him he nodded to me indicating that he recognized me I said is that how you took it he said yes at a small pharmacy if somebody goes in and walks in the door I think perfectly plausible they just smiled at everybody in fact he smiled at him the first time too as I recall Your Honor and it could be taken that way but the factual inference of course is that a fact how he took it that's a fact well no I mean the factual the inference on the fact the only fact there was no other fact but let's go on to the merits alright Your Honor um the okay with regard to the that it really is a sufficiency argument what the defense is attempting to do is take the vagueness doctrine and then apply it to the facts of this case to say oh look there's factual issues about whether this person should have been convicted therefore he could be someone to whose conduct the statute does not clearly apply if that were the rule for vagueness challenges every defendant could make a vagueness challenge and just translate the standard take the standard for a sufficiency case and slide over and just pick the easier standard for the defendant to prevail uh the quote does it clearly apply to the conduct that's not the inquiry that's made in vagueness cases the inquiry that's made is this the type basically it's more categorical is this the type of offense or conduct to which this statute applies not in this particular instance does this evidence this evidence this evidence add up to a sufficient challenge it is troubling the way he defense counsel phrases it is if you are a pharmacist and this is what you sell and it's legal to sell this stuff um it's hard to know when you should not sell it I mean that that's the vagueness argument how do I know I'm not supposed to sell this guys come in I don't sell them over the amount I tell them look usually this stuff lasts so that's just the first count um on that day is he not supposed to sell let me put it the exact way that the defendant was told specifically Dennis Ming a pharmacy inspector came into the defendant's pharmacy four months before these transactions and quote to use Mr. Ming's language got in his it is a violation of federal law for you to sell it that was told directly to the defendant and on this date on January 4th when the officers came in and said oh we need something to break it down standing in front of the defendant indicating as the testimony is in the this is clear to the defendant who the evidence clearly establishes knew that pseudo-amphetamine could be used to make methamphetamine how much clearer can you get to him that in fact that's what these guys were going to do with it did you get that evidence in that the wholesaler reported it that's a good questionnaire I believe that did come in just as background evidence as to how the investigation started the numbers are in there anyway the increase in quantity the increase came from wholesaler records and also the fact the wholesaler representative testified that these stock bottles 100 count 60 milligram pseudo-amphetamine typically used to fill prescriptions the defendant would sell these directly to the general public and other pharmacies in his size in geographical area the defendant sold 5,000 bottles during the same time period two other pharmacies each sold one most pharmacies sold none or ordered none rather 5,000 from the defendant's pharmacy was there evidence of what kind of profit he was making on this yes your honor that's a very good question the defendant brought in an expert to testify that most of his money was made from prescription sales at a profit margin of approximately 11% this was his accountant his profit on the pseudo-amphetamine bottles he bought 5,000 of these bottles during that time period 6 dollars a bottle profit was 30 grand it's a much higher profit margin than was his prescription sales so there was a financial incentive to sell these things I'm only dealing with the bottles he also sold and his clerk testified that about half the time when people would come in to buy one of these stock bottles the 100 count 60 mg they would also buy two blister packs of 24 count they'd walk away with a total of 148 60 mg pills which works out to just barely under the 9 grams so yeah the defendant would sell just barely under the 9 grams I understand although you said that he was specifically informed your case doesn't depend on that anyway right no not his knowledge of the law no it does not necessarily depend on that so we have a problem with this is that he since it's a legal thing to sell and he doesn't have a legal obligation to sell it but if somebody comes in and you say I'm not going to sell that to you and then it turns out that this is troublesome that there aren't better guidelines because you're putting people in a bad position your honor it's a law that does require people who are authorized to sell this and bear in mind your honor authorization to sell this is not just for pharmacists this law applies equally to pharmacists the authorization is not just   but it's for the defense I sorta suspect you wouldn't be prosecuting the cashier but it could be a near theory you're right your honor the difference is this it's not just the individual transaction we know we have a breadth of evidence showing prior to this what the defendant's knowledge was he clearly knew that pseudoephedrine could be used to make methamphetamine now your clerk but if your clerk your individual clerk in Safeway who's selling it if that person knows and if we can prove it yeah this actually kind of ties into another question I want to ask that Mr. Kim's counsel brought up is really that Safeway Savon and Walgreens and the big stores can kind of mask this put in their cash register up to nine and then it cuts off the same guy can come in a hundred times and buy for cash and nothing happens and so their argument is look what you're really doing is you're selectively and arbitrarily prosecuting the little guy because it can be pinpointed while Safeway and Savon just go about their merry business they're more response to that yes your honor you're right that that person in the individual store would be more in a position to know and to you know have the evidence in front of them and know that this might be being misused now those stores by the way as corporations many of them voluntarily took the step before it was mandated by law of moving all this stuff behind the counters so at least  a potential purchaser had to ask someone for it and if you have a potential person who comes up and asks the same clerk over and over for it then that gives the clerk the opportunity and I noticed in the pharmacy recently that it's not out is that why there's a new statute that is because of this problem your honor but there's a new statute or there isn't you know there's pending federal legislation I believe and I think California has already legislated they need to go behind the counters it depends on the store in some places you can buy it out in some places you have to ask for it that's true and there's some places where you can use those you know like they have at Home Depot automatic self scanners where you just scan stuff yourself but you know it's programmed into the computer but what's the response then for the fact that the way this is set up is that you aren't prosecuting the big guys and it really falls to what is kind of a vanishing artifact and that's the local pharmacist who gets prosecuted and may I respond your honor the distinction that draws is people who know or have reasonable cause to believe that what they're distributing is going to make methamphetamine or not and it's not the thing that's concerning about the defendant's brief is nobody's trying to target individual pharmacists and this statute applies to everybody it applies to every individual if I'm a 7-11 owner it's the it's always going to have to be an individual who's going to be prosecuted by this so you're always going to have to prove the individual would know it shakes out I think correctly in the court's statement that a person who is in a single store who's the only person there for example is going to be in a much better position to know what they're selling than is somebody in a clerk in a state place and your honor but the thing is this law does impose upon individuals the responsibility to police their sales and that was one of the things that was most troubling about the case. Let's go back just three points. First of all the defendant did report suspicious transactions to the local police officer in fact the undercover agent in this case. He made 10 to 15 calls during the year of this investigation where he would call him up and say I think somebody suspicious is here. So that's wrong. The second thing is the cost of the bottles. That's sort of what the problem is here. He's in business to make money. The bottles cost him two dollars and something. If he buys the blister pack it's about four dollars and something. To the consumer it really doesn't make any difference. To a small pharmacy it means two dollars more legal or less unlawful. And the third point that I wanted to make is exactly the one that you were making before, Your Honor. There's no guidelines for enforcement. When are you supposed to sell? When are you not supposed to sell? We had an expert who said you have an ethical obligation to sell as a pharmacist to someone who needs the medicine. And that's  did. The medicine has already been decided that it's not vague? Only that it's not vague on its face. Both of those cases, the Eighth Circuit and the Tenth Circuit, have both left open the possibility and in fact applied. If you look at those cases they applied a vagueness as applied analysis. The vagueness as applied challenge has to assume the facts as found. And the facts as found are that he reasonably should have known. So the question is whether somebody right? I don't believe that that's true because that's the jury's verdict. They found him guilty of the crime. There's no specific   So they look at that look if it's vague as applied. And what they then do is they say oh this person was buying from multiple wholesalers. They were selling it in carton quantities. They were using secret names. None of that. Can you give me some example of any kind of statute that's been held vagueness as applied. Frankly I've never heard of this. I don't know what it means to be vague as applied. I know it exists. Give me an example. I believe some of the head shop statutes that when they were originally enacted which is where this statute  there's   paragraph where it       you should not be vague. You should not be vague as applied. So I'm not vague as applied. Okay. Thank you.
judges: Berzon, McKeown, King